IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 27, 2004

## STATE OF TENNESSEE v. PHILLIP AARON YORK

**Direct Appeal from the Criminal Court for Cocke County**
**No. 8487     Ben W. Hooper, II, Judge**

_____

**No. E2003-02883-CCA-R3-CD - Filed February 3, 2005**

_____

The defendant, Phillip Aaron York, was convicted of eight counts of child rape. Sentences of twenty-five years were imposed for each conviction. Two convictions were ordered to run consecutively, with the remaining convictions to run concurrently, for a total effective sentence of fifty years to be served in the Department of Correction. On appeal, the defendant challenges (1) the sufficiency of the evidence, and (2) the length of the sentence imposed by the trial court. Upon review of the record and applicable law, we conclude that the evidence is sufficient to sustain the convictions for rape of a child, but that pursuant to Blakely v. Washington, 542 U.S. ----, 124 S. Ct. 2531 (2004), enhancement factors (2) and (16) cannot be applied. Accordingly, we affirm the convictions, but modify the sentence imposed from a fifty-year effective sentence to a forty-year effective sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed as Modified**

J.C. MCLIN, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Edward C. Miller, District Public Defender, Dandridge, Tennessee, for the appellant, Phillip Aaron York.

Paul G. Summers, Attorney General and Reporter; Jennifer Bledsoe, Assistant Attorney General; Al Schmutzer, Jr., District Attorney General; and James B. Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The defendant's convictions of child rape stem from four years of sexual intercourse with the victim. Although the indictment charged the defendant with eighteen counts of child rape, the

trial court granted in part the defendant's motion for judgment of acquittal, allowing the jury to consider only the offenses alleged to have occurred on October 31, 1998, February, 22, 2001, May 21, 24, 25, 27, 29 of 2001, and June 2, 2001.

The victim was fourteen years old at the time of trial.[1]  She testified that she was born on September 7, 1989, and that the defendant was her mother's boyfriend who lived with her and her mother for approximately nine years.  During direct examination, the prosecutor asked, "[D]id this defendant do something to you."  The victim responded, "[Y]es, . . . [h]e raped me."  Asked if she was raped more than once, the victim said, "[y]es."  The victim also testified that the defendant would "sometimes" use a condom during these rapes though she could not remember when or how many times a condom was used.  In addition, the trial court asked the victim, "did [the defendant] have sexual intercourse with you?", and she responded "[y]es."

The victim testified that she was first raped by the defendant on October 31, 1998.  The rape occurred in the defendant's camper located behind a local market place.  She remembered the date because it was Halloween and she later hurt herself falling in the shower after the rape.  As to the details of the rape, the victim stated that it occurred in the bedroom of the camper where the defendant instructed her to lie on the bed, then took off her clothes, got on top of her, and raped her. The victim testified that the defendant ejaculated during the rape, and told her that she would be "in serious trouble" if she told anyone.

The victim told the jury that she had been raped "eighteen" times.  She testified that she was raped at the trailer for the second time on February 22, 2001.  When questioned how she remembered this specific date, she responded, "[m]y mother was gone to the movies" to see "What Women Want."  Asked if she could remember the last time she was raped, the victim answered, "June the 2nd," of 2001.  In response to the question, "[d]id the defendant put anything in your mouth?", she said, "[h]is penis."

Next, the victim was asked if she could give "[the jury] some dates and times of other occasions when this occurred."  The victim stated that she was raped "[t]wo weeks after [her] sister's birthday, two Fridays after . . . [on] March 19."  When questioned "how many times did [rape] occur in March?", she responded, "about six."  At this time, the trial court interjected and asked, "what year?"  The victim answered, "2001."  The victim also testified that she was frightened of the defendant.  As a result, the rapes continued for four years before the victim told her mother.

On cross-examination, the victim identified more dates when she was raped by the defendant. She said she was raped on "5/21/01," but could not remember where the rape occurred.  She also said she was raped at the trailer on "5/24/01" and "5/25/01."  However, when asked, "[d]o you remember what you were wearing on [either] occasion," the victim stated that she could not remember, but did recall that the defendant took her clothes off, and raped her in the bedroom of the trailer.  When

---

[1]  While testifying, the victim gave short responses to questions, and for that reason, we have set out certain facts in a question and response format.

questioned "when it happened again?", she responded, "[t]he 27th . . . and "29th . . . of May." The victim then admitted "[remembering] some of [the rapes] but not all of them," and having to refer to her notes to refresh her memory.

Detective Robert Caldwell of the Cocke County Sheriff's Department testified that he first became involved in the investigation when he was assigned to question the defendant on June 6, 2001. After advising the defendant of his miranda rights, Caldwell asked the defendant if he wished to make a statement. Caldwell stated the defendant acknowledged that he understood his rights, voluntarily signed the written Miranda waiver of rights form, and confessed to having sexual intercourse with the victim. The confession was then transcribed by Caldwell, signed by the defendant, and witnessed by Caldwell and Detective Bryan Murr. The confession, admitted into evidence and read to the jury by Caldwell, states:

> I have been living with [the victim's mother] for about nine years. When [the victim's mother] and me got together we had a little . . . she had a little girl, [the victim], about two years old. [The victim's mother] also had a little girl, . . . , who was two months old. [The victim's mother] and I now have a little girl, . . . , who's age three.
> About four years ago I started having sex with [the victim]. I can't remember exactly how it started but I have never made [the victim] do anything she did not want to do. After the first few times, [the victim] started liking having sex with me. Sometimes I would perform oral sex on [the victim], sometimes she would perform oral sex on me.
> I would say that I have had sex with [the victim] hundreds of times over the past four years. The sex would always be at my home or in my storage building at [address]. I always told [the victim] not to tell anybody, that we would get into trouble. I did not threaten to hurt [the victim]. I would always have [the victim] by herself when I would have sex with her.
> The last time I had sex with [the victim] was this past week. I think it was Saturday, June 2nd, 2001. I think before the June 2nd incident it was about three or four days earlier that we had sex. I did not intend to hurt [the victim]. I love her very much. When I had . . . Excuse me. When I had sex with [the victim] this past Saturday we were in mine and [the victim's mother's] bed.
> I wish I could do this over. This would never have happened. I started going to church about two years ago trying to get over this thing with [the victim]. I got out of the church about three months ago. Earlier this morning I had a .38 revolver and was thinking of killing myself over this thing with [the victim].

This is a true statement to the best of my ability and I've given this statement because I want to cooperate and help [the victim] . . . . Signed Phillip York and witnessed by [Robert Caldwell] and Bryan Murr.

On cross-examination, Caldwell acknowledged that there existed an inconsistency in the number of times the defendant claimed to have had sex with the victim and the number of times the victim claimed the rapes occurred.

At the close of the State's case in-chief, the defendant moved for judgment of acquittal as to certain counts of the indictment. After reviewing the evidence, the trial court concluded that the State had proven only eight counts of child rape, and granted the defendant's motion as to the remaining ten counts. The trial court instructed the jury that the State would seek conviction for only eight counts of the indictment. The jury found the defendant guilty on all eight counts of child rape (counts one, five, nine, ten, eleven, twelve, thirteen, and sixteen).

## ANALYSIS

### I. Sufficiency Of The Evidence

The defendant first argues that the evidence was insufficient to support his eight convictions for rape of a child. Specifically, he contends that the victim testified to only one occasion that would constitute rape of a child; whereas, on all other occasions the victim simply testified that the defendant "raped her." The defendant submits that this evidence was insufficient to establish beyond a reasonable doubt that the defendant raped the victim eight times. We respectfully disagree.

When the sufficiency of the evidence is challenged on appeal, the standard of review is whether, considering the evidence in favor of the State, any reasonable trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Evans, 108 S.W.3d 231, 236 (Tenn. 2003). Once a jury finds the defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991). As a result, the convicted defendant has the burden of demonstrating to this Court why the evidence will not support the jury's verdict. State v. Carruthers, 35 S.W.3d 516, 557–58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). In contrast, the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. Id. The jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992); State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this Court. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence, nor do we substitute our inferences drawn from the circumstantial evidence for those drawn by the trier of fact. State v. Elkins, 102 S.W.3d 581, 582

(Tenn. 2003); State v. Reid, 91 S.W.3d 247, 277 (Tenn. 2002); State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

Rape of a child is defined as "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a) (2003). Sexual penetration is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Tenn. Code Ann. § 39-13-501(7). Therefore, the State was required to prove beyond a reasonable doubt that the victim was less than thirteen years of age and that the defendant intentionally, knowingly, or recklessly engaged in sexual penetration of the victim on the eight occasions set out in the indictment.

Viewing the evidence in the light most favorable to the State, the evidence is sufficient to establish beyond a reasonable doubt that the defendant sexually penetrated the victim on eight occasions. The victim was fourteen years old at the time of trial, and by its verdict, the jury obviously found that her use of the word "rape" encompassed the statutory definition of child rape. Likewise, the victim's testimony regarding the defendant's actions is consistent with the statutory definition of child rape as "sexual penetration." During her testimony, the victim stated that the defendant put his penis in her mouth. The victim also responded affirmatively when asked by the trial judge if the defendant had "sexual intercourse" with her.

Additionally, the evidence is sufficient to establish beyond a reasonable doubt that the victim was raped eight times as a child over a three year period. The victim testified that she was born in 1989 and was first raped on October 31, 1998. She remembered the date because it was Halloween and she had hurt herself in the shower sometime after the rape. She stated that the second rape occurred on February 22, 2001, while her mother was out watching a movie. She then told the jury that she was raped on May 21, 24, 25, 27, and 29 of 2001. The victim testified that the last rape occurred on June 2, 2001. Thus, each date the victim testified to corresponded with a date set out in the indictment. We also note that the defendant's written confession stated that he had sex with the victim "hundreds of times over the past four years." Moreover, his statements relating to oral sex with the victim, the locations where the sex occurred, and the last time the defendant had sex with the victim further corroborated the victim's testimony regarding the rapes. The jury heard the victim's testimony and the defendant's admissions and found the defendant guilty of all eight counts. Therefore, we conclude that a rational jury could have found beyond a reasonable doubt that the defendant committed the eight counts of child rape on the dates set out in the indictment, and the issue is without merit.

## II. Sentencing

The defendant also argues that his sentences are excessive because, in his view, the trial court improperly applied enhancement factor (2) under Tenn. Code Ann. § 40-35-114(2), and failed to properly consider mitigating factor (1) under Tenn. Code Ann. § 40-35-113(1). Although the

defendant did not challenge the trial court's application of enhancement factor (16) concerning the abuse of a position of private trust, we address the issue in light of Blakely v. Washington.

At the sentencing hearing, the trial court enhanced the defendant's sentence after applying enhancement factors (2), that the defendant had "a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," and (16), that the defendant abused a position of private trust. Tenn. Code Ann. §§ 40-35-114(2) & (16). The trial court gave considerable weight to both enhancement factors. As to the application of enhancement factor (2), the trial court relied on the defendant's written confession read into the record by Detective Caldwell. Specifically, the defendant's statement that he had "sex with [the victim] hundreds of times over the past four years." As to the application of enhancement factor (16), the trial court found that the defendant lived with the victim and her family for nine years, and stood as a "father figure" in the home. Therefore, the defendant abused this position of private trust when committing the rapes. As to the application of mitigating factors, the trial court found mitigating factor (8), that the defendant suffered from a mental condition that significantly reduced his culpability for the offense, carried "very little to no weight," and found no other applicable mitigating factors. See Tenn. Code Ann. § 40-35-113. The trial court ordered counts five, nine, ten, eleven, twelve, thirteen, and sixteen to run concurrent with each other, but consecutive to count one, for a total effective sentence of fifty years to be served in the Department of Correction.

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing guidelines and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to consider the statutory sentencing guidelines, there is no presumption of correctness and review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997). The appealing party has the burden of showing that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) (Sentencing Commission Comments).

In order to conduct a proper *de novo* review of the sentence, this Court must consider (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or enhancement factors; (g) any statements made by the defendant in his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

Before this Court reviews the defendant's sentence, we must first address the impact of Blakely v. Washington on Tennessee's sentencing enhancement provisions. The United States Supreme Court's recent opinion in Blakely holds that a trial court cannot enhance a sentence beyond the statutory maximum based on factors other than those found by the jury or admitted by the defendant. In Blakely, the Supreme Court, applying the rule in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), struck down a provision of the Washington sentencing guidelines that permitted a

trial judge to impose an "exceptional sentence" upon the finding of certain statutorily enumerated enhancement factors. The Supreme Court reversed and remanded the case, holding that the sentence violated the defendant's Sixth Amendment right to a jury trial because the facts supporting the defendant's "exceptional sentence" were neither admitted by him nor found by a jury. Blakely, 124 S. Ct. at 2537.

Our sentencing scheme under the 1989 Act is similar to Washington's Sentencing Act, prescribing particular ranges of punishment depending upon the class of felony and the defendant's sentencing range. According to our sentencing scheme, "[r]ape of a child is a Class A felony." Tenn. Code Ann. § 39-13-522(b). Because the defendant was a Range I offender, he was subject to a potential sentence of fifteen to twenty-five years for each of his convictions. Id. § 40-35-112(a)(1). Pursuant to Tennessee Code Annotated section 40-35-210(c), "[t]he presumptive sentence for a Class A felony shall be the midpoint of the range if there are no enhancement or mitigating factors." Procedurally, the trial court starts at the midpoint of the sentencing range, increasing the sentence within the range as appropriate based upon the existence of enhancement factors, and then, reducing the sentence within the range as appropriate based upon the existence of mitigating factors. Id. § 40-35-210(d)-(e). Blakely impacts the validity of the enhancement portion of our statutory sentencing scheme by specifying that the prescribed statutory maximum equates to the presumptive sentence, not the maximum sentence in the range. See Blakely, 124 S. Ct. at 2537. Consequently, a trial court cannot enhance a sentence beyond the presumptive sentence based on factors other than those found by the jury or admitted by the defendant.

In this case, the trial court's application of enhancement factor (2) was based on the defendant's written confession of past criminal behavior introduced at trial, but not on any prior criminal convictions. Although the Blakely decision does not impede the imposition of a greater sentence based upon evidence of prior convictions, it does preclude a sentencing enhancement based upon past criminal behavior unless the facts essential to the punishment were either admitted by the defendant or found by a jury beyond a reasonable doubt. See Blakely, 124 S. Ct. at 2536-37. Therefore, the fundamental question we must consider is whether an incriminating statement extrapolated from the defendant's written confession qualifies as an admission by the defendant under Blakely.

We initially note that in Blakely, the Supreme Court did not elaborate on what constitutes an admission by the defendant. Whether an admission in this context refers to a stipulation by the defendant in relation to a formal judicial proceeding such as a guilty plea hearing or plea colloquy, or whether such admission simply equates to an admission by the defendant during his testimony at the sentencing hearing is subject to debate. See, e.g., State v. Chester Wayne Walters, No. M2003-03019-CCA-R3-CD, 2004 WL 2726034 (Tenn. Crim. App., at Nashville, Nov. 30, 2004). Nonetheless, as Blakely explains, the Sixth Amendment vests in the jury the right to make all the factual determinations legally essential to the punishment imposed. Blakely, 124 S. Ct. at 2543. "When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to punishment, and the judge exceeds his proper

authority." Id. at 2537. Moreover, when discussing a defendant's admissions, the Supreme Court placed them within the context of a guilty plea hearing where the defendant voluntarily waived his right to a jury trial and entered a guilty plea. The Supreme Court stated, "nothing prevents a defendant from waiving his *Apprendi* rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial fact finding." Id. at 2541; see also Apprendi, 530 U.S. at 488. In this case, the evidence considered by the trial court when applying enhancement factor (2) was the defendant's written confession entered into evidence as a party opponent admission. At trial, the jury considered this admission only for the purpose of rendering a guilty verdict on eight counts of child rape. The jury did not make a determination of all the facts essential to a finding of past criminal behavior. Moreover, the jury had no opportunity to make a finding of past criminal behavior because the jury was instructed by the trial court to consider the evidence only for the purpose of determining the defendant's guilt as to the eight counts of child rape, nothing more. Absent the additional finding, the guilty verdict authorized no more than the presumptive sentence for the convictions. Therefore, the defendant's written confession presented by the State at trial does not constitute an admission by the defendant for the purposes of Blakely because the admission was not the product of the defendant's testimony at trial or at the sentencing hearing. To hold otherwise would circumvent Due Process and Sixth Amendment guarantees as interpreted in Blakely. In addition, Blakely precludes the trial court's application of enhancement factor (16) because the factor was not reflected in the jury's verdict, nor admitted by the defendant. As a result, we conclude that the trial court's application of factors (2) and (16) to enhance the defendant's sentence was improper under Blakely.

The defendant argues that the trial court erred by declining to apply mitigating factor (1), that his conduct neither caused nor threatened serious bodily injury. Tenn. Code Ann. § 40-35-113(1). Specifically, the defendant argues that "serious bodily injury" as defined by statute includes injury that involves "extreme physical pain." Id. § 39-11-106(a)(34). He argues that because no proof was presented to support a finding of "extreme physical pain," this mitigating factor was applicable.

Although the definition of "serious bodily injury" includes "extreme physical pain," it also encompasses substantial mental impairment. Id. § 39-11-106(a)(34). This Court has held that it "is difficult to conceive of any factual situation where the rape of a child would not threaten serious bodily injury." State v. Edward Earl Huddleston, No. 02C01-9706-CC-00228, 1998 WL 67684, at *3 (Tenn. Crim. App., at Jackson, Feb. 20, 1998), perm. app. denied (Tenn. Oct. 19, 1998). "Every rape . . . is physically and mentally injurious to the victim." State v. Kissinger, 922 S.W.2d 482, 487 (Tenn. 1996). "Oral and vaginal penetration of a child victim presents a danger of both physical and psychological injury." State v. Steven M. Stinson, No. E2003-01720-CCA-R3-CD, 2004 WL 1698203 at *7 (Tenn. Crim. App., at Knoxville, July 29, 2004); see also State v. Arnett, 49 S.W.3d 250, 260 (Tenn. 2001) (recognizing that victims of rape must surely experience mental trauma). Therefore, we conclude that the trial court did not abuse its discretion in declining to apply mitigating factor (1).

In summary, we conclude that the evidence is sufficient to sustain the child rape convictions, but that under <u>Blakely</u>, the trial court erred in applying enhancement factors (2) and (16) to the defendant's sentences. Therefore, we reduce each of the defendant's eight child rape sentences from twenty-five to twenty years which results in a total effective sentence of forty years at 100%. Otherwise, we affirm the judgments of the trial court.

_____

J. C. McLIN, JUDGE